OPINION
{¶ 1} Appellant, Janice E. Cowan, appeals from the March 14, 2002 judgment entry of the Portage County Municipal Court, Ravenna Division, in which appellant was found guilty of three counts of failing to confine a vicious dog, one count of failing to confine a dangerous dog, and fined.
 {¶ 2} On December 31, 2001, a complaint was filed in Portage County Municipal Court, Ravenna Division, charging appellant with two counts of failing to confine a vicious dog, violations of R.C. 955.22 and misdemeanors of the first degree, and one count of failing to confine a dangerous dog, a violation of R.C. 955.22 and a misdemeanor of the fourth degree. Another complaint was filed in Portage County Municipal Court, Ravenna Division, on January 18, 2002, charging appellant with failure to confine a vicious dog, a violation of R.C. 955.22(D)(1) and a first degree misdemeanor.
 {¶ 3} Appellant filed a motion to dismiss the charges on March 12, 2002. In her motion, appellant argued that R.C. 955.22 was void for vagueness and that it violated her due process rights. A jury trial was held on these matters on March 13, 2002. Immediately prior to the commencement of the trial, the trial court overruled appellant's motion.
 {¶ 4} At trial, Margaret Mauer ("Mrs. Mauer") testified that two of appellant's dogs bit her on the arm and leg on the evening of October 1, 2001, while she was standing in her driveway. Her husband, Jeffrey Mauer, called 9-1-1. An ambulance came and Mrs. Mauer was taken to Akron City Hospital. At the time of trial, Mrs. Mauer still had scars from the attack.
 {¶ 5} Deputy Cheryl Heckman ("Deputy Heckman"), a Portage County Dog Warden, responded to a call regarding a dog bite on the evening of October 1, 2001. Deputy Heckman's investigation led her to conclude that appellant's dogs were the perpetrators of the attack. Based on the fact that appellant's dogs had seriously injured Mrs. Mauer, Deputy Heckman determined that appellant's dogs were vicious. Deputy Heckman explained to appellant that her dogs, because they were vicious, needed to be confined in a pen with a top, or in a locked fenced yard. Appellant indicated that she understood this, but refused to sign the paperwork that Deputy Heckman presented to her.
 {¶ 6} Deputy Russell Trautman ("Deputy Trautman") testified that on November 22, 2001, he received a call that appellant's dogs were running loose in Suffield Township. When Deputy Trautman and Deputy Jason Williard ("Deputy Williard") arrived at appellant's residence, they found the dogs tethered to trees. They informed appellant that her dogs were not allowed to run loose, and that pursuant to R.C. 955.22, they were not properly confined in a locked fenced yard or in a pen with a top.
 {¶ 7} Deputy Williard testified that on January 18, 2002, he was notified that appellant's dogs were loose. He went to appellant's home, but she did not answer the door. He checked to see if the dogs were properly confined and observed that appellant did not have the appropriate pen for confining vicious dogs. Based on his observations, Deputy Williard, after consulting with his boss, decided to file charges against appellant for failure to confine vicious dogs.
 {¶ 8} On March 14, 2002, the jury found appellant guilty of all four charges. The trial court ordered appellant to pay a fine of $750 and costs, with $250 of the fine suspended. Appellant was also ordered to surrender her dogs to the dog warden. It is from that judgment that appellant filed a timely notice of appeal on April 4, 2002, and makes the following assignments of error:
 {¶ 9} "[1.] The trial court erred by denying appellant's motion to dismiss, as R.C. 955.11 is void for vagueness.
 {¶ 10} "[2.] The trial court erred by denying appellant's motion to dismiss, as appellant was denied her rights to procedural due process as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 16, Article I, of the Ohio Constitution.
 {¶ 11} "[3.] [Appellant's] convictions are against the manifest weight of the evidence."
 {¶ 12} In her first assignment of error, appellant argues that R.C. 955.11 sets a subjective standard for enforcement. R.C. 955.11(A)(1) provides that "`Dangerous dog' means a dog that, without provocation, * * * has chased or approached in either a menacing fashion or an apparent attitude of attack, or has attempted to bite or otherwise endanger any person, while that dog is off the premises of its owner, keeper, or harborer and not under the reasonable control of its owner, keeper, harborer * * * or not physically restrained or confined in a locked pen which has a top, locked fenced yard, or other locked enclosure which has a top." Pursuant to R.C. 955.11(A)(2), "`[m]enacing fashion' means that a dog would cause any person being chased or approached to reasonably believe that the dog will cause physical injury to that person." Appellant argues that "menacing fashion" is a subjective standard and that there are no reasonably clear guidelines for law enforcement personnel to follow in making a determination as to whether a dog is dangerous or vicious.
 {¶ 13} The Supreme Court has enunciated the following principles in addressing issues of vagueness: "`Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.'" (Emphasis sic.) Hoffman Estates v. The Flipside, HoffmanEstates, Inc. (1982), 455 U.S. 489, 498, quoting Grayned v. Rockford
(1972), 408 U.S. 104, 108-109.
 {¶ 14} Any analysis of a statute that is being challenged as unconstitutionally vague begins with a strong presumption that the legislative enactment in question is constitutional. State v. Ferraiolo
(2000), 140 Ohio App.3d 585, 585. The party challenging the statute has the burden of showing that an individual of ordinary intelligence would not understand what she must do under that statute. Id.
 {¶ 15} In State v. Singer (Ariz. 1997), 945 P.2d 359, 361, the appellant challenged as unconstitutionally vague a barking dog ordinance, which provided that "[n]o person shall keep a dog within the City limits which is in the habit of barking or howling or disturbing the peace and quiet of any person within the City." The Arizona Court of Appeals held that the phrase "any person" was not unconstitutionally vague because there was inherent in that phrase a presumption that such person be a reasonable one. Id. at 362. In Baldwin v. Carter (Me. 2002), 794 A.2d 62, the Supreme Judicial Court of Maine adopted the logic of Singer in upholding a similar ordinance. The Carter court observed that for the appellant to succeed in her appeal, she had to prove that no logical construction could be given to the words of the ordinance that would make it constitutional. Id. at 67.
 {¶ 16} In the instant matter, R.C. 955.11(A)(2) provides that the individual being menaced must "reasonably believe that the dog will cause physical injury to that _person." (Emphasis added.) The requirement of a reasonable belief precludes a determination that a dog is dangerous simply because it approached a hypersensitive or unreasonably fearful person, even though the dog was wagging its tail.
 {¶ 17} Further, not only must the dog approach the individual in a menacing fashion, it must do so in a specific context. When the incident occurs, the dog must either be off the premises of its owner and not under the control of a responsible person, or, on the premises of its owner, but physically restrained by a locked fence yard, or a locked enclosure which has a top. In sum, a dangerous dog is an unrestrained dog, which, without provocation, chases an individual, or which approaches an individual, while growling or barking (the manner in which a typical dog would "menace" an individual).[1] Given these parameters, the definition of "dangerous dog" is sufficiently narrowly drawn that a responsible pet owner of ordinary intelligence should be able to determine the type of conduct that could cause her dog to be deemed a dangerous dog.
 {¶ 18} Appellant also argues that the definition of a "vicious dog" is subjective. However, R.C. 955.11(A)(4) defines a "vicious dog" as one that kills or injures a person, or kills another dog. Thus, an individual of ordinary intelligence should understand that such conduct on the part of one's dog is prohibited. For the foregoing reasons, we conclude that R.C. 955.11 is not void for vagueness and that appellant's first assignment of error is without merit.
 {¶ 19} In her second assignment of error, appellant contends that R.C. 955.22 is unconstitutional because it denies a defendant his procedural due process rights. More specifically, appellant argues that there is no opportunity for a defendant to be heard with respect to a vicious or dangerous dog determination. In the absence of an opportunity to be heard, a defendant clearly has no ability to appeal such a determination.
 {¶ 20} "Due process of law implies, in its most comprehensive sense, the right of the person affected thereby to be present before the tribunal which pronounces judgment upon a question of life, liberty or property, to be heard, by testimony or otherwise, and to have the right of controverting, by proof, every material fact which bears on the question of right in the matter involved." State v. Sanders (Sept. 29, 1995), 2d Dist. Nos. 95 CA 11, 95 CA 12, 1995 WL 634371, at 6. To determine whether an appellant has received due process, a court must examine three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation, and the probable value of additional safeguards; and (3) the government's interest, including the function involved and the administrative burdens that an additional or substitute procedural requirement would entail. Mathews v. Eldridge
(1976), 424 U.S. 319, 335.
 {¶ 21} In an employment context, the Supreme Court has observed that the principle that an individual is entitled to a hearing prior to that person being deprived of a significant property interest means that an employee with a constitutionally protected property interest is entitled to "`some kind of a hearing'" prior to being discharged.Cleveland Bd. of Edn. v. Loudermill (1985), 470 U.S. 532, 542, quotingBd. of Regents v. Roth (1972), 408 U.S. 564, 569-570. The Loudermill
court indicated that "`something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." Loudermill, supra, at 545, quoting Mathews v. Eldridge, 424 U.S. 319 at 343. This hearing should serve as an initial check against mistaken decisions and determine whether there are reasonable grounds to believe that the charges are true. Loudermill, supra, at 545-546.
 {¶ 22} In the matter at hand, the determination of whether appellant's dogs were dangerous and/or vicious was made by the dog warden. On October 1, 2001, Deputy Heckman was called to the Maurer's residence in connection with a dog bite incident. Based on her inquiry, Deputy Heckman determined that Mrs. Maurer had suffered a serious injury and that the dogs involved in the incident belonged to appellant. Deputy Heckman then went to inform appellant of her obligations under R.C. 955.11
based on her determination that the dogs were vicious. At that point, however, appellant did not have the opportunity to be heard if she disagreed with Deputy Heckman's determination, and, in fact, appellant denied that her dogs had been running loose.
 {¶ 23} Appellant argues that R.C. 955.22 does not require a hearing by an administrative agency or a court for a dog to be deemed vicious or dangerous. Appellant also contends that the statute gives the dog warden unfettered discretion to label any dog vicious or dangerous without any sort of factual finding by a detached, neutral fact finder, and that there is no mechanism for appealing the dog warden's decision. We agree. Appellant was denied any right to be heard prior to her property rights being substantially and adversely affected.
 {¶ 24} Appellee argues that appellant received notice of the four criminal complaints by certified mail, and appellant was provided an opportunity to be heard at the jury trial. Appellee specifically contends that appellant had the opportunity to challenge appellee's six witnesses, as well as to present testimony and evidence in defense of the criminal charges. As such, appellee stresses that appellant's procedural due process claim is without merit and should be overruled. We disagree. If this court followed appellee's logic, there is a great possibility that "non-dangerous" and "non-vicious" dogs may be put to death, due to a dog warden's mistake, before the owner of the dog would be given the opportunity to be heard at trial.
 {¶ 25} Although this court recognizes the necessity to protect the public from vicious and dangerous dogs, a rapid decision-making process must not deny an individual of his or her procedural due process rights. "In its most fundamental form, procedural due process demands that an individual must receive notice and a meaningful opportunity to be heard."Schulte v. Beavercreek (Sept. 24, 1999), 2d Dist. Nos. 99 CA 6 and 99 CA 7, 1999 Ohio App. LEXIS 4433, at 7-8, quoting Goldberg v. Kelly (1970),397 U.S. 254, 267. "The right to appeal is a property interest that cannot be denied without due process of law." Schulte, supra, at 8, quoting, Atkinson v. Grumman Ohio Corp. (1988), 37 Ohio St.3d 80, 85. "Due process requirements have been applied to administrative appeals."Schulte, supra, at 8.
 {¶ 26} In an administrative context, with respect to employment, "some kind of a hearing" is required prior to an employee, with a constitutionally protected property interest, being discharged.Loudermill, supra, at 542. Other administrative examples, including zoning and unemployment, also require a hearing by a board of review, prior to depriving someone of a property interest, in order to comply with due process. See, e.g., McCray v. Dayton Bd. of Zoning Appeals (July 8, 1992), 2d Dist. No. 13168, 1992 Ohio App. LEXIS 3628; Becka v. OhioUnemployment Comp. Rev. Comm. (Mar. 22, 2002), 11th Dist. No. 2001-L-037, 2002 Ohio App. LEXIS 1326. In the case at bar, however, there is no board of review in which appellant could have appealed the dog warden's decision to take her property, namely her dogs. Therefore, we conclude that appellant was denied due process. Thus, appellant's second assignment of error is with merit.
 {¶ 27} In her third assignment of error, appellant asserts that the trial court's finding of guilt was against the manifest weight of the evidence. A "manifest weight" inquiry requires a review of the entire record, after which the appellate court weighs the evidence and reasonable inferences that can be drawn therefrom, considers the credibility of the witnesses, and, finally, determines whether the jury clearly lost its way in resolving conflicts in the evidence. State v.Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 5.
 {¶ 28} In this case, Mrs. Maurer's testimony that she was attacked by dogs was not disputed. The injuries were serious enough to require a trip to the hospital, and Mrs. Maurer still bore scars from the attack at the time of trial. Mrs. Mauer was very familiar with appellant's dogs and had encountered them on numerous occasions. Further, she indicated at trial that there was more than adequate lighting for her to identify the dogs, particularly since they were literally on top of her. Therefore, we conclude that the jury did not clearly lose its way in determining that appellant's dogs were vicious.
 {¶ 29} On the issue of whether appellant had properly confined her vicious dogs, the state presented evidence at trial to show that appellant had not constructed an enclosure for her dogs. Law enforcement personnel testified that appellant's dogs were not properly confined, but were simply tied to trees in the yard. Appellant did not controvert this testimony. Thus, the jury's conclusion that appellant had not properly confined her vicious and/or dangerous dogs was not against the manifest weight of the evidence. Therefore, appellant's third assignment of error is without merit.
 {¶ 30} For the foregoing reasons, the judgment of the Portage County Municipal Court, Ravenna Division, is affirmed in part, reversed in part, and remanded.
WILLIAM M. O'NEILL, J., concurs,
JUDITH A. CHRISTLEY, J., dissents with dissenting opinion.
[1] Our reading of the statute suggests that would not be considered dangerous if the dog approached an individual in a menacing fashion after that person had entered the enclosure designed to restrain the animal.